## SHEAFFER'S APPEAL.

Bequest of a sum of money charged on land, to testator's widow, "of which she shall receive the interest, so long as she lives and remains my widow," passes but a life estate, though there be no disposition made of the principal.

Devise to A. for the sum of $6000—$1500 for her own legacy, and $1500 to B. for life, and the residue, excepting $300, to other legatees. The undisposed portion and the $1500, after the death of B., pass under the intestate laws to the personal representatives of testator.

The Orphans' Court have jurisdiction to compel payment of a charge on land not bequeathed, to which the personal representatives are entitled under the intestate law.

From the Orphans' Court of Lancaster county.

*May* 11. The petition of Sheaffer, guardian of Ann Myer, set forth that Heistand bequeathed to his wife "$1500, which shall remain in this property, situate, &c., of' which she shall receive the interest, which is $90, to be paid quarterly if she may want it, and if not, yearly, as she may request it, only so long as she lives and remains my widow." To his daughter Elizabeth he devised the land before described in fee "for the sum of $6000—$1500 for her own legacy and $1500 for my wife, of which she shall only receive the interest *of* six per cent. quarterly, as she may stand in need of it, which shall be paid only so long as she remains my widow and shall live."

He further bequeathed a legacy of $1500 to his son Peter, who he directed should have a room in the house for life, and be maintained by his sister Elizabeth, "who shall be his sole and whole heir, and none other after his death."

To "the two children" of his daughter Nancy he bequeathed

$500 each, payable out of the land—and to her son $200, also payable out of the land.

That Elizabeth, the devisee, and her husband entered on the land.

That testator left a widow, who is dead, leaving a will, of which Strickler was executor. He also left a son, Peter, who is now dead, without issue, and unmarried; Elizabeth, the devisee, who is living; and two grandchildren, daughters of testator's daughter Nancy, who died before him. One of these granddaughters is since deceased, and the petitioner is the guardian of the survivor.

The petition then set forth that no disposition had been made of $300 of the $6000, the consideration-money charged on the land by the will, or of the $1500 charged thereon for the life of the widow, after her decease, and prayed general relief.

The devisee of the land, and Strickler, the executor of the testator's widow, demurred to the petition.

The court (LEWIS, P. J.) dismissed the petition for want of jurisdiction.

*Ellmaker*, for appellant.

*Franklin* and *Frazer*, contrà.—The widow is entitled to the legacy absolutely: for a devise of the interest of a sum of money is an absolute bequest of the money. The court has no jurisdiction but in case of legacies—which these are not, but of an undisposed surplus. They cited 6 W. 14; Ward on Leg. 18; Law Lib. 18.

*May* 29. BELL, J.—The sums of money brought into controversy by this proceeding being claimed by the executor of Anna Heistand, the widow of the testator; by Elizabeth Groff, his daughter and devisee; and by the guardian of Ann Myers, his surviving grandchild, it becomes necessary to inquire into and settle their respective pretensions.

The first of these parties insists that the testator intended to give to his widow the principal sum of $1500, charged upon the land devised to the daughter, postponing only the time of payment for the convenience of the devisee. This claim rests upon those words in the will in question, importing an absolute bequest to the testator's wife: "Also I will $1500 unto my beloved wife Anna, which said sum shall remain on this property," &c. "I will and bequeath unto my daughter Elizabeth Groff, and her heirs for ever, this my property, &c., situate and being in Mount Joy and Rapho

townships, for the sum of six thousand dollars, $1500 for her own legacy, and $1500 for my beloved wife Anna," &c.  These general words standing alone, would undoubtedly have carried the whole interest in the subject of them.  But they are restrained and controlled by what immediately follows, directing that the legatee shall receive only the interest of the principal sum set apart, during her life or widowhood.  The language manifesting an intent that she should take nothing beyond this, notwithstanding the general words of donation before used, is, in my estimation, too strong and explicit to be gotten over.  These terms of restriction are employed in both the instances in which mention is made of the subject of bequest, as if the testator was anxious to guard against misapprehension.  "Of which," he says, speaking of the principal sum, "she shall receive the interest," "only as long as she lives and remains my widow."  In the immediately succeeding item, the same intent is repeated still more emphatically: "Of which she shall *only* receive the interest of six per cent. quarterly, as she may stand in need of it, which shall be paid only as long as she remains my widow and shall live."

Looking to all these provisions, it is, I think, impossible to arrive at any other conclusion than that the testator meant a particular sum should be set apart for the use of the widow during life or widowhood, not by absorption of the principal, but by the application of its annual interest.  Had the direction been, after the general words of gift, that the widow should receive only the interest during life, there would have been some room for a construction placing the principal sum at her disposal; or, in default of this, leaving it to go to her personal representative.  But it can hardly be presumed there was an intent to restrict her to the interest during her widowhood, and yet to endow her with the principal immediately on her remarriage.  This would be to defeat a condition which very obviously, in the contemplation of the testator, attached upon the provision he was settling for his future widow.  She shall receive the interest "only as long as she lives and remains my widow."  That is, when she ceases to be my widow, she shall cease so to receive; but this would be altogether nugatory, if she were then entitled to the sum which produced the annual interest.  In the particular event, to exclude her in terms from the enjoyment of the latter, and yet to admit her to the possession and use of the former, would be a contradiction which cannot fairly be imputed to the devisor.  But upon the words of this will there are as good grounds for saying she should take the principal

sums on her marriage, as that her executor should take it at her death. The extent of the testator's bounty is limited equally by the condition of widowhood and continued existence. These are both used by the same terms, and in the same sentence, to define the extent and duration of the gift. No distinction, verbally or otherwise, is made between them. If, therefore, the widow's interest would have been terminated by a second marriage, of which there can be no doubt, her death equally determined it.

This conclusion does no violence to the rule of construction which regards a bequest of the interest or produce of a legacy without qualification or limitation of continuance, as tantamount to an absolute gift of the legacy itself, (2 Rop. on Leg. 333, and cases there cited; Garrett v. Rex, 6 W. 17); for this does not hold where, from the nature of the subject or the context of the will, it appears the interest only was intended for the legatee. Nor is it in conflict with our case of Hellman v. Hellman, 4 Rawle, 440; for though that bequest is in some of its features like this, it differs in the essential particular, that the payment of interest was unlimited by a specified time or event; and therefore the court, looking to the whole will, thought the clause but cautionary and directory to the devisee of the land, to withhold payment of the principal under circumstances that might make its receipt disadvantageous to the beneficiary. But this cannot be predicated of the present bequest. There is nothing within the four corners of this will that can operate to impress upon the clauses which qualify and restrain the general words of gift, the character of a mere caution, powerless to limit the interest of the legatee within the wide scope of the language first employed. On the contrary, as I have endeavoured to show, these clauses are entirely efficacious for such a purpose. It results that Mrs. Heistand's interest in the subject of the bequest ceased with her life.

The claim preferred on the part of the grandchild is also resisted by the devisee, on the ground that the sums charged on the land, and which are ultimately undisposed of by the will, sink for the benefit of the devisee. Upon this point there is contrariety of decision in the English courts; and under the conflict of authority, it is, perhaps, not always easy to determine, in these cases, when a sum of money charged on land devised, of which no ultimate disposition is made, shall go to the devisee, and when to the heir at law, of the devisor. But the weight of authority, as of reason, I think strongly inclines to support the principle stated by Lord

Eldon in Sidney *v.* Shelley, 19 Ves. 363, that if the devisor has himself created the charge, and to the extent of it, the intention appears on the face of the will not to give the estate to the devisee, it will, to the extent of the charge, the particular object failing, go to the heir, and not to the devisee. This is the doctrine of Arnold *v.* Chapman, 1 Ves. sen. 108, which was a devise to Chapman, he paying to the executor 1000*l.*, with a devise over of all the remainder of the estate, after payment of debts and legacies, to the Foundling Hospital. The bequest of the 1000*l.* to the hospital being void, by the statutes of mortmain, a question arose whether it should go to the heir, or sink for the benefit of the devisee. Lord Hardwick gave it to the heir, observing "This devise is 'a sale to Chapman for 1000*l.*, and the purchase-money arising from the estate, must go to the person entitled to that estate:" and he concluded his judgment by saying, "as the charge therefore is well made on the estate, but not well disposed of by reason of the act, it must be considered as between the heir and hospital, as part of the real estate undisposed of, and must be for his benefit." A similar principle prevails in the strictly analogous class of cases, where particular sums, part of the avails of lands devised to be sold, are excepted out of the devised produce, but are not themselves disposed of. It is said to be clear on the authorities that such sums belong to the heir: 2 Pow. Dev. 86. An instance of this is furnished by Collins *v.* Wakeman, 2 Ves. jun. 683, where, out of the proceeds of certain lands devised to be. sold, and which the testator directed should be considered *as part of his personal estate*, he gave, after several pecuniary legacies, 1000*l.* to his executor and trustee, to be disposed of according to any instructions he might leave in writing; and all the residue of his personal estate and effects he bequeathed to M. W. The testator having left no instructions as to the 1000*l.*, a contest arose in respect to it, between the residuary legatee, the next of kin, and the heir at law. Lord Rosslyn decided in favour of the latter, observing, "that where the court has no direction from the testator to whom the money arising from any part of his estate shall go, it rests with the heir at law." Looking to the declaration of this will, that the proceeds of the realty should be considered as personalty, this must be regarded as a very strong case in support of the rule I have stated. I do not deem it proper to swell this opinion by a citation of the decisions on the subject beyond the two cases, to which reference has been made, as most strongly illustrative of the principle which we think must govern this controversy. The cases

are collected by Mr. Powell in his treatise on Devises, and there reviewed with his usual ability.

That to the extent of the burden imposed on the land, our testator did not intend to give the estate to the devisee, except where he had expressly otherwise directed, is manifest from the whole scope of his will. In fact, it may be regarded as a conveyance of the land in consideration of the sum of $6000 *minus* the sum of $1500 given to the devisee. With the exception of $1500 set apart for the son Peter, and which upon his death was to go to the devisee, it is clear the testator intended that the latter should pay to some one the balance of the $6000 as the price of the land devised. But he failed to make an ultimate disposition of the $1500 charged on the estate for the benefit of his widow during life, and a balance of $300, part of the sum of $6000. These sums, therefore, as part of the purchase-money arising from the estate, must, according to the doctrine of the cases I have noticed, go to the heirs at law, as the persons who otherwise would have been entitled to the estate. For this purpose it is to be considered as if so much land as was of the value of $1800 had been suffered to descend. (Cruse *v.* Barley, 3 P. Wm. 20.) Under the events that have had place here, as stated in the petition of the guardian, but two persons survive, who, under our system, sustain the relation of heirs to the testator. These are Elizabeth Groff his daughter, and Ann Myers his granddaughter, standing in the place of a deceased daughter. The sums in dispute are therefore to be equally divided between them.

This is the conclusion at which the Orphans' Court correctly arrived. But, conceiving that the testator died intestate as to the two sums which remained specifically undisposed of, it was thought the court could not entertain jurisdiction of the petition under the 59th section of the act of 24th Feb., 1834. Prior to the making of this statute, our common law courts, in the absence of a chancery jurisdiction, had been driven by necessity to devise a form of action for the recovery of legacies charged on land. The result was the cumbrous remedy pointed out in Brown *v.* Furer, 4 S. & R. 213, and Gause *v.* Wiley, Ib. 509. Every day's practice proved this to be so inconvenient, and indeed inadequate, that it was always viewed with disfavour and resorted to with reluctance. This inconvenience is not felt in those states that have courts of chancery, which take cognizance of every case of testamentary charge on land, and afford a remedy commensurate with the exigency of each case. This consideration produced the 59th and

succeeding sections of the act of 1834, by which the Orphans' Court of each county was endowed with power to adjudicate in cases of legacies charged upon and payable out of lands, upon the application of the legatee by bill or petition, and to proceed according to equity to make such decree touching the payment of the legacy out of real estate, as may be requisite and just. It is a highly remedial act, and is to be liberally expounded in furtherance of a remedy without which our courts would be in a measure powerless to afford adequate redress in many cases. We are not, therefore, to restrict its operation by a literal adherence to the very terms in which it is conceived, but may, without impropriety, bring under its active influence every case that can reasonably be embraced within its spirit. This was done in Mohler's Appeal, decided at the present sitting, where it was held the act gave jurisdiction to the Orphans' Court to decree the personal liability of an alience of land charged with the payment of an annual sum. The decree of the court below was reversed, because by a too rigid adherence to the words of the statute, it was thought payment could only be ordered out of the "real estate" charged. The court said "the act is remedial, the evident design being to give the court every power relative to the premises, which a court of equity would have." And again, "the words of the act are satisfied by a decree ordering the money to be made by a sale of the land in the first instance; its spirit, by ordering that in case that should prove insufficient, the residue should be raised personally from the alienee or his personal representatives." In Downer v. Downer, 9 W. 60, which was ejectment to compel payment of a testamentary charge of money on land, it was held, that although the interest the plaintiffs had under the will was not technically a gift or legacy, it might be considered an interest payable out of the estate devised, and, therefore, the plaintiffs were bound to proceed for its recovery in the Orphans' Court, under the act of 1834. "This," say the court, "is a remedial act, and it would impair its usefulness to give it a narrow construction. The act provides for calling all the parties in interest before the court, who have power in the premises to do all a court of chancery could do, and under their plastic hands to administer justice in a complete and ample manner." The principle of these cases tends to establish the statutary remedy as available wherever chancery would interfere to enforce payment of a charge on land in the nature of a testamentary gift, or springing from a testamentary disposition. Such is the present instance. The fund in which the petitioner seeks to par-

ticipate, is created by the will of the testator, charged on the land devised, and payable by the devisee to those legally entitled. It is by operation of the will that a right to the fund exists; and surely an appropriate remedy for its recovery ought not to be defeated, because the persons who are entitled to it are not specifically named. In such a case, chancery would interfere on the application of the parties entitled; and indeed, in a variety of instances, chancery alone could so marshal the conflicting interests as to do full and complete justice. This proceeding is therefore within the purview of our statute, which contemplates the application of the equitable remedy. In truth, we should unnecessarily narrow the construction already put upon the act, did we not hold that the Orphans' Court possesses jurisdiction wherever a pecuniary interest, created by a last will, and partaking of the character of a gift, is payable out of land in the hand of a devisee or his alienee. The Orphans' Court committed an error, therefore, by dismissing the petition of the guardian, and its order must be reversed.

> Decree dismissing the petition reversed, and the devisees of the land ordered to pay to the guardian of the petitioner her share of the sums of $1500 and $300, charged on the land and undisposed of by the will.